Marcel Dean GUHR, Respondent,

v.

DIRECTOR OF REVENUE, State
of Missouri, Appellant.

No. SC 88159.

Supreme Court of Missouri,
En Banc.

June 26, 2007.

Motion to Modify Opinion Denied
Aug. 7, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Brad R. Jones, Asst. Atty. Gen., Jefferson City, for Appellant.

Jeffrey S. Eastman, Gladstone, Carl M. Ward, Washington, Timothy R. Cisar, Lake Ozark, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

A Versailles police officer arrested Marcel Dean Guhr for driving while intoxicated. Guhr refused to submit to a chemical test of his breath. Consequently, the director of revenue revoked Guhr's driver's license pursuant to section 577.041, RSMo Supp.2006.[1] Guhr petitioned the circuit court for a hearing. The court determined that there was no probable cause to arrest Guhr for driving while intoxicated and ordered the director to reinstate his driving privilege. Because the judgment was against the weight of the evidence, it is reversed, and the case is remanded.

## I. Factual and Procedural Background

Marcel Dean Guhr was arrested. The police officer's narrative of the incident that was admitted into evidence is the basis for the following account.

At around 10:00 p.m., the officer saw a blue Chevrolet pickup truck leaving the Tiger Lanes bowling alley. He observed the driver of the truck twice accelerate so that the rear tires lost traction and spun on the pavement.

The officer returned to his car to attempt to stop the driver of the blue Chevy. He began following the truck, but at first did not see it. He then heard a loud vehicle accelerating from the north. The officer turned north onto South Oak Street. As he turned, he saw the truck's lights go on while the driver accelerated, traveling south on Oak Street. The officer turned around and saw the truck turn right on Clay Road. The officer attempted to stop the truck on Highway 5, but did not see it. He turned onto Clay Road and then saw the truck back out of the bowling alley parking lot, stop, and go forward back into the parking lot. Driving past Tiger Lanes, the officer retrieved the truck's license information. He then saw the truck back out of the parking lot into the street. He turned around and stopped the truck in the Tiger Lanes parking lot.

While approaching the vehicle, the officer saw the driver, Marcel Guhr, place a brown object in the bed of the truck and then walk away. The officer instructed Guhr to return to his vehicle. Guhr said "no." The officer again told Guhr to return to his vehicle. Guhr replied that he was not going back to his vehicle. The officer advised Guhr that he was under arrest (the first arrest) and, for the third time, instructed him to return to his vehi-

---

1. All statutory references are to RSMo Supp. 2006 unless otherwise indicated.

cle. Guhr said "no" and that he was not going with the officer. The officer then grabbed Guhr's arm and walked with him back to the truck, where he handcuffed him. The officer noted, "I could smell a strong odor of an intoxicating beverage coming from Mr. Guhr." The officer asked Guhr how much he had had to drink that night. Guhr answered, "two drinks." The officer put Guhr in the patrol car and radioed for assistance.

The officer returned to Guhr's truck and retrieved the brown object he had seen him place in the bed of the truck: two bottles of Jose Cuervo tequila. The officer then advised Guhr that he was under arrest for driving while intoxicated (the second arrest).

The officer took Guhr to the Morgan County jail. Guhr willingly performed the field sobriety tests, but refused to submit to a chemical test of his breath to determine the alcohol content of his blood. The officer explained that his refusal would cause his driver's license to be revoked for one year. When Guhr responded that he knew that, the officer notified Guhr of his license revocation pursuant to section 577.041.1.

In addition to the narrative containing the above information, the officer completed a form "Alcohol Influence Report," in which he recorded his observations of Guhr. The form does not indicate when the observations were made.

Guhr filed a petition seeking review of his license revocation pursuant to section 577.041.4. The court admitted into evidence the director's exhibit A, which included Guhr's driving record, the officer's narrative, the alcohol influence report, and the director's notice of license revocation for refusal to submit to a chemical test. Guhr submitted no evidence. No witnesses testified.

The court found that the officer did not have probable cause to arrest Guhr for driving while intoxicated. It found that all evidence concerning his intoxication was determined post-arrest. It, therefore, declared void the director's order revoking Guhr's license and ordered the director to reinstate his driving privileges. The court prepared a written "Judgment and Order" but made no findings of fact.

The director appealed. The Court of Appeals, Western District, ordered transfer of the case after opinion. Mo. Const. art. V, sec. 10.

## II. Statutory Framework

■■■ Missouri's implied consent law is so named because it provides that "any person who drives on the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of the person's blood." *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 619 (Mo. banc 2002); sec. 577.020.1. *See generally* Edward H. Hunvald, Jr. & Franklin E. Zimring, *Whatever Happened to Implied Consent? A Sounding*, 33 Mo. L.Rev. 323, 324 (1968). The purpose of the law is "to rid the highways of drunk drivers." *Hinnah*, 77 S.W.3d at 619.

Under the implied consent statutory framework, a driver may refuse to submit to a chemical test requested by an officer. Sec. 577.041.1. If the driver refuses even after being informed that refusal will result in immediate revocation of the driver's license, the officer, on behalf of the director, personally serves the driver with notice of license revocation and issues a fifteen-day temporary permit. *Id.* The officer must submit to the director a certified report, made under penalties of perjury, that includes a statement that the officer had reasonable grounds to believe the driver was driving while intoxicated and that the driver refused to submit to a chemical test. Sec. 577.041.2. Upon receiving the officer's report, the director

revokes the driver's license for one year. Sec. 577.041.3.

A driver whose license has been revoked for refusal to submit to a chemical test may petition for a hearing in the county of the arrest or stop. Sec. 577.041.4.

> At the hearing the court shall determine only:
> (1) Whether or not the person was arrested or stopped;
> (2) Whether or not the officer had [r]easonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; [and]
> (3) Whether or not the person refused to submit to the test.

*Id.* "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." Sec. 577.041.5. "The director, thus, has the burden of proof at the hearing." *Hinnah,* 77 S.W.3d at 620.

### III. Standard of Review

■ The standard of review to be applied in this court-tried case is that of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). This Court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32. Since this is a case in which the trial court found there was no probable cause, this Court must determine whether there was evidence of probable cause and, if so, whether the trial court's judgment was against the weight of that evidence.

### IV. Issue on Appeal

■ Neither party disputes that Guhr was arrested and refused to submit to the chemical test requested. The only issue on appeal is whether the officer had "reasonable grounds" to believe Guhr was driving while intoxicated. Sec. 577.041.4. " 'Reasonable grounds' is virtually synonymous with probable cause." *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002).

■ "Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest." *Id.* at 621. In this case, there were two arrests. The trial court stated at the hearing that "[a]ll evidence concerning his intoxication was determined post-arrest." Although it is unclear from the record, it appears the court made the probable cause determination by viewing the information in the officer's possession prior to the first arrest.

The officer's narrative does not give the reason for the first arrest, but it indicates that it occurred after the officer observed Guhr peeling out, driving without headlights, and repeatedly disobeying the officer's instructions after being stopped. Because the narrative does not indicate otherwise, the logical conclusion is that the first arrest was for these violations.

■ On the other hand, the officer's narrative specifically notes that he informed Guhr that the second arrest was for driving while intoxicated. Section 577.041 does not require the officer to have probable cause to believe the person was driving while intoxicated when the officer makes the initial stop or arrests the driver for other violations. *Dixon v. Dir. of Revenue,* 118 S.W.3d 302, 306 (Mo.App.2003). The probable cause determination must be made by evaluating the information in the officer's possession prior to the second arrest rather than the first.

> Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense.... There is no precise test for

determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.[2]

*Hinnah,* 77 S.W.3d at 621.

■ Guhr argues that certain facts and circumstances of his case should be excluded from the probable cause analysis. First, he contends that his possession of the two tequila bottles should not be considered because nothing in the record indicates how much, if any, tequila the bottles contained, or whether they were open or still sealed. However, the record does indicate that the officer knew Guhr had two bottles of tequila with him in the cab of the truck and that he attempted to move them to the bed of the truck when he was stopped. The lack of any further information about the bottles does not warrant total disregard of those facts. A prudent person could consider them, in conjunction with all the other facts and circumstances in the officer's possession prior to the second arrest, in forming a belief that Guhr had committed the offense of driving while intoxicated. *Hinnah,* 77 S.W.3d at 621.

Second, Guhr argues that his uncooperative behavior should be disregarded, because there is no correlation between uncooperative behavior and intoxication. This argument is without merit. The probable cause analysis requires consideration of all the information in the officer's possession prior to arrest. *Hinnah,* 77 S.W.3d at 621. Neither the officer nor a reviewing court must disregard information that, standing alone, may not constitute probable cause.

Finally, Guhr asserts that the officer's observations recorded in the alcohol influence report should not be considered because the report does not indicate whether the observations were made before or after Guhr was arrested for driving while intoxicated. This Court need not decide that issue, because the information contained in the officer's narrative does indicate what observations were made prior to the arrest for driving while intoxicated, and that information is sufficient for a finding that probable cause existed.[3]

■ The narrative indicates that, prior to the second arrest, the officer had the

---

2. This Court has stated that, in driver's license suspension or revocation cases pursuant to section 302.505, probable cause to believe a person was driving while intoxicated exists "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Brown v. Dir. of Revenue,* 85 S.W.3d 1, 4 (Mo. banc 2002). This shorthand statement may be helpful in such cases, but it is not a modification of the general probable cause standard stated above.

3. The trial court applies an objective standard to determine whether the officer had probable cause to believe the person was driving while intoxicated. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 621 (Mo. banc 2002) ("Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense."). Nothing in *York v. Director of Revenue,* 186 S.W.3d 267 (Mo. banc 2006), holds to the contrary.

The standard of appellate review in a court-tried case is *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). If the facts of a case are contested, then this Court defers to the trial court's determinations regarding those facts. *Hinnah,* 77 S.W.3d at 620. If, as in this case, the facts are not contested, then the issue is legal and there is no finding of fact to defer to. *Id. York* did not change this standard of appellate review.

Although "the trier of facts has the right to disbelieve evidence, even when it is not contradicted," *Healthcare Services of the Ozarks, Inc. v. Copeland,* 198 S.W.3d 604, 616 (Mo. banc 2006), there is nothing in this record to indicate that the trial court disbelieved any of the evidence. It appears that the trial court simply focused on the first arrest instead of the second arrest in determining whether probable cause existed.

following information: Guhr was driving erratically and not using his headlights at night, he moved two tequila bottles from the cab to the bed of the truck after being stopped, he repeatedly refused to obey the officer's instructions even after being placed under arrest the first time, he smelled of alcohol, and he admitted he had been drinking. The officer's knowledge of the facts and circumstances at the time of the second arrest, as transcribed in his narrative, was sufficient to warrant a prudent person's belief that Guhr had committed the offense of driving while intoxicated. *Hinnah*, 77 S.W.3d at 621. The trial court's judgment that the officer did not have probable cause to believe Guhr was driving while intoxicated was against the weight of the evidence.

## V.   Conclusion

The judgment is reversed, and the case is remanded.

All concur.